**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MADONNA VOLLAND GOLDEN, as executor of the estate of JOHN VOLLAND | ) ) ) | |
| | ) | No. 13 C 1477 |
| Plaintiff, | ) ) | |
| | ) | JUDGE SHADUR |
| vs. | ) ) | Magistrate Judge Kim |
| The CITY OF CHICAGO, Illinois, a municipal corporation, and Chicago Police Officers SEAN CAMPBELL #12516, and STEVEN SAUTKUS, #10609, | ) ) ) ) ) | JURY DEMAND |
| Defendants. | ) ) | |

## DEFENDANTS' MOTIONS *IN LIMINE*

Defendants City of Chicago, and Chicago Police Officers Sean Campbell and Steven Sautkus ("Defendants"), by their attorneys, Jessica Griff and Brendan Moore, Assistants Corporation Counsel for the City of Chicago, hereby move *in limine* to bar Plaintiff from introducing any testimony, evidence, or argument on the following topics:

1) **Bar any testimony, evidence, argument or reference to other civil lawsuits, complaint registers, and/or disciplinary histories of Defendants Campbell or Sautkus or other police personnel who may testify.**

Defendants hereby move *in limine* to bar any testimony, evidence, or argument regarding prior disciplinary action, complaint registers, lawsuits, or other pending or past complaints against Defendants Pellerano or Berka or any other police personnel who may testify. In support of this motion, Defendants state as follows:

In the course of discovery, Plaintiff's counsel elicited testimony about the disciplinary histories of Defendants Campbell and Sautkus and other police witnesses. Defendants anticipate

that Plaintiff may seek to use information concerning disciplinary histories to present evidence of bad character pursuant to Federal Rule of Civil Procedure 404 (b). However, Plaintiff's counsel did not include any proposed exhibits referencing CR files on their exhibit list nor include any character witnesses on their proposed witness list. As there are no exhibits concerning CR files or proposed character witnesses, it would be improper for Plaintiff to elicit any testimony concerning the underlying allegations. Such testimony would paint these allegations in an improper and incomplete context and would be highly prejudicial to Defendants. Defendants remain opposed to the use of unfounded allegations contained in CR files being admissible as character evidence in any context even if Plaintiff had indicated his wish to do so.

Furthermore, any evidence of prior lawsuits, civilian complaints, or discipline is irrelevant, would amount to no more than hearsay, and would be more prejudicial than probative; thus, such evidence should be barred pursuant to FED. R. EVID. 403. *see also Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d. Cir. 1991) (holding that admission of evidence of other complaints against police officers was irrelevant and overwhelmingly prejudicial to defendant); *Lataille v. Ponte*, 754 F.2d 33, 34 (1st Cir. 1985) (prejudicial error to admit past disciplinary records).

Any information or allegation that the Defendant or non-defendant officers may have acted wrongfully in the past is nothing more than so-called "bad acts" evidence or "propensity evidence." Propensity evidence, however, is inadmissible under FED. R. EVID. 404(b) to prove that a party acted consistently with his alleged bad character on the occasion in question. *See Huddleston v. U.S.*, 485 U.S. 681, 685 (1988); *U.S. v. Shriver*, 842 F.2d 968, 974 (7th Cir. 1988). In this case, Plaintiff's only purpose for introducing or suggesting such evidence would be to attempt to taint the jury into believing that accusations of accused misconduct had been brought against Defendants in the past, and that Defendants likely acted in a similar manner under the circumstances presented here. Additionally, although exceptions exist which would permit the introduction of propensity

evidence, none of these exceptions are present here. Thus, any evidence, testimony, or argument regarding Defendants' prior lawsuits, civilian complaints, and disciplinary history in law enforcement must be barred as improper propensity evidence. *See Anderson v. City of Chicago*, 2010 WL 4514828 (N.D. Ill. Nov. 2, 2010) (barring evidence of prior civilian complaints against defendant officer as impermissible propensity evidence); *Caldwell v. City of Chicago*, 2010 WL 380696 at *3 (N.D. Ill. Jan. 28, 2010) (barring evidence of unrelated police misconduct).

Finally, whereas here, when Plaintiff's pre-trial order is devoid of any indication that Plaintiff seeks to use such evidence, justice especially requires that a bar be placed on any attempt to do so at trial.

Wherefore, Defendants request that this Court enter an order barring any testimony, evidence, or argument regarding prior disciplinary action, complaint registers, lawsuits, or other pending or past complaints against Defendants or any other police personnel who may testify.

**2)** **Remove the City of Chicago as a named Defendant at Trial.**

The City of Chicago should be removed as a trial Defendant as there are no substantive claims against the City in this case. Defendants admit that on July 4, 2014 Defendant Watkins was acting under color of law and within the scope of his employment as a Chicago police officer. Dkt.# 71, p. 2, ¶6. Defendants admit that at all relevant times Defendant Viti was a Chicago police detective employed by Defendant City, acting under color of law and within the scope of this employment. Id. at ¶8. Defendants agree if either or both of the Defendant Officers are found liable for compensatory damages, attorneys' fees, and costs, then that would result in an automatic judgment against the City for the same amount. The City of Chicago is really only a Defendant for indemnification purposes. Plaintiff's allegations are solely against the Defendant Officers. Given that the City would be liable by operation of law, even under *respondeat superior*, if either or both of the Defendant Officers were found liable for Plaintiff's state law claim, there is no need for the City to be a named trial Defendant. Naming the City of Chicago as a Defendant on the case caption, on the verdict form, or mentioning the City as a Defendant in the jury instructions, would only serve to confuse the jurors and improperly signal to the jury that "deep pockets" are available to pay any judgment.

Additionally, Defendants request that this Court bar reference to defense counsel as "assistant corporation counsel" or as city employees in order to avoid the improper inference that a judgment against the defendants might be paid out of the city's "deep pockets." *Walker v. Saenz,* No. 91-C3669, 1992 WL 317188, at *3, 1992 U.S. Dist. LEXIS 16454,at *11 (N.D.Ill. Oct. 27, 1992)

**3) Bar testimony/evidence/argument/reference to unrelated allegations of police misconduct in the media (e.g. Anthony Abbate, SOS, Commander Evans, Jason Van Dyke).**

Defendants hereby move *in limine* to bar Plaintiff from introducing any testimony, evidence, or argument of controversial, unconstitutional, illegal, or questionable conduct by officers who are not a party to this case. In support of this motion, Defendants state as follows:

Plaintiff may attempt to mention, discuss or refer to other events regarding allegations of police misconduct, such as recently highly publicized incidents involving Chicago Police Officers. This includes, but is not limited to, references to such highly publicized cases of recent media interest involving Jason Van Dyck, Anthony Abbate, the Special Operations Section of the CPD, Corey Flagg, Ronald Watts, or Jerome Finnigan, among others. These local events have placed the issue of allegations of police misconduct before the public by way of extensive media coverage, such that law enforcement personnel are often depicted in an unfavorable, and even hostile, manner. In this current climate, references to alleged police misconduct during the trial can only serve to inflame the jury against the police in general and against the Defendant officer in this particular case. Comments about or implied references to other incidents of police misconduct have no probative value, are totally irrelevant to the issues presented, and will only serve to inflame the jury. *See e.g. Caldwell v. City of Chicago*, 08 C 3067, 2010 WL 380696, *2 (N.D. Ill. Jan. 28, 2010) (granting motion to bar evidence or testimony regarding misconduct of other officers); *Saunders v. City of Chicago*, 320 F.Supp.2d 735, 740 (N.D. Ill. 2004) (granting motion to bar evidence or testimony of allegations other police misconduct); *Heflin v. City of Chicago*, No. 95 C 1990, 1996 WL 28238 (N.D. Ill. January 22, 1996). Accordingly, Plaintiff, his witnesses and attorneys should be precluded from making any reference to any alleged police misconduct, including recent highly publicized instances of such misconduct. *See* FED. R. EVID. 401, 402, 403. *see also Moore v. City of Chicago*, No. 02 C 5130, 2008

WL 4549137, * 5 (N.D.Ill. April 15, 2008) (granting motion to bar publicized incidents of police misconduct).

WHEREFORE, Defendants respectfully request that this Court enter an order barring Plaintiff from introducing any testimony, evidence, or argument of controversial, unconstitutional, illegal, or questionable conduct by officers who are not a party to this case.

4) **Bar evidence, argument or suggestion of a speculative police "code of silence" or "blue wall."**

Defendants hereby move *in limine* to bar Plaintiff from introducing any testimony, evidence, or argument regarding a "code of silence" or "blue wall" or that Chicago Police Officers generally protect other officers, cover up for other officers, or fail to intervene in the misconduct of other fellow officers. In support of this motion, Defendants state as follows:

Defendants seek to bar Plaintiff from offering any testimony, evidence or argument that police officers lie, conspire, cover up, or otherwise maintain a "code of silence" or "blue wall" to protect their fellow officers. This Court should exclude such evidence because it is not relevant to the jury's determination of credibility of the police testimony in this case and would only serve to prejudice Defendants. Evidence is admissible at trial only if it makes the existence of any facts that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. FED. R. EVID. 401. Moreover, even relevant evidence should be excluded where its prejudicial effect outweighs its probative value. FED. R. EVID. 403.

Generalized allegations of a police "code of silence" or that police officers cover up for other police officers "are akin to the conclusion that all mechanics, when they have the opportunity, assess over-charges for unnecessary repair; that all politicians, when the public's back is turned, accept bribes; and that all taxpayers, when they think they can get away with it, cheat on their taxes - - and no one ever tells. In a court of law, however justice is dispensed based on evidence of articulated and proven facts, not on generalized assumptions and prejudices." *Sanders v. City of Indianapolis*, 837 F. Supp. 959, 963 (S.D. Ind. 1992). The sole purpose for the introduction of this testimony is to invoke images in the minds of jurors that officers run amok to protect their own like they have seen in so many movies. The jury's decision, however, must be based upon facts not the speculation or rumination of witnesses regarding the general nature of police officers. In that regard

this evidence is no different from bad acts evidence except that it is more illusory because it has no

particular connection to the Defendants. Moreover,

> If [evidence of a police 'code of silence' were held admissible here, it logically
> would be admissible in every suit, civil or criminal, in which a police officer was
> alleged to be lying to support the testimony of a fellow police officer. Indeed, it
> would be admissible in every civil and criminal case in which even a single police
> officer testified.

*Shaw v. City of New York*, 1997 WL 187352 at **7-8 (S.D.N.Y Apr. 15, 1997). This Court, too,

should decline to open the floodgates to this type of generalized evidence whose only purpose is to

unduly prejudice individual defendants.

Plaintiff has also intimated that she may seek to introduce statements made by the Mayor on

December 9, 2015 to the jury in the upcoming trial of this matter as well as comments by the Police

Accountability Taskforce. Defendants note that the Mayor's statements were made nearly two years

after the occurrence of the underlying incident and have no relationship whatsoever to the conduct

of police officers involved in this incident or the questions of fact before the jury.

As one court explained,

> [t]hese types of generalized arguments are improper and will not be allowed—any more than
> the Court would allow the government in a criminal case to argue that "FBI agents are
> carefully screened for their integrity and thus tell the truth." This case will be tried on the
> basis of evidence adduced in the courtroom, not on the basis of generalized and speculative
> arguments and innuendos about "what police officers or law enforcement agents do or do
> not do."

*Carlson v. Banks*, 05 C 1650, 2007 WL 5711962, *14 (N.D. Ill. Feb. 2, 2007). Furthermore, even if

general evidence of a police "code of silence" or "blue wall" were somehow relevant to matters at

issue or the credibility of the testimony in this case (which it is not), this Court should nonetheless

exclude such evidence because its prejudicial effect substantially outweighs its probative value. *See*

*Caldwell v. City of Chicago*, 08 C 3067, 2010 WL 380696, *3 (N.D. Ill. Jan. 28, 2010) (barring plaintiff

from presenting evidence showing police generally cover up for each other and that there is a code

of silence in the Chicago Police Department); *see also Coloyan v. Badua,* 256 Fed. Appx. 958 at *1 (9th.

Cir 2007) (upholding decision to exclude evidence of a police code of silence because prejudice would have outweighed its probative value); *Estate of Gee ex. rel. Beeman v. Bloomington Hospital*, 2012 WL 639517 at \*11 (S.D. Ind. Feb. 17, 2012) (barring the use of the phrase "code of silence" as unduly prejudicial); *Shaw v. City of New York*, 1997 WL 187352 at \*\*7-8 (S.D.N.Y. Apr. 15, 1997) (excluding evidence of blue "code of silence" because the probative value was outweighed by the potential for unfair prejudice).  Furthermore, Plaintiff lacks a foundation to make this argument.  Accordingly, pursuant to Rules 401, 402, and 403, Plaintiff should be barred from presenting at trial any testimony, evidence, or argument that police officers in general lie, conspire, cover up, or otherwise maintain a "code of silence" or "blue wall" to protect their fellow officers.  FED. R. EVID. 401, 402, & 403.

Wherefore, Defendants respectfully request that this Court enter an order barring Plaintiff from introducing any testimony, evidence, or argument regarding a "code of silence" or "blue wall" or that Chicago Police Officers generally protect other officers, cover up for other officers, or fail to intervene in the misconduct of other fellow officers.

**5) Bar Any Evidence or Argument Regarding Investigations by the Independent Police Review Authority or the City of Chicago Police Department, the Discipline Imposed (or Lack Thereof) as a Result of Said Investigations.**

Plaintiff should be barred from mentioning the investigation of Defendants in this case by the Independent Police Review Authority ("IPRA") and making any reference to an "internal investigation" or similar terms regarding the incident alleged in the complaint. The nature and quality of the IPRA investigation into the allegations raised by this lawsuit is entirely irrelevant to the claims, is prejudicial in that it could be used to suggest that the Defendants in this case did something wrong, and would confuse the jury, as it may suggest that if any investigation took place, it was only done because some sort of misconduct occurred. Further, there were no sworn statements given by any party in the IPRA investigation, so there would be no reason to refer to the investigation for that purpose. The IPRA complaint made by Plaintiff was administratively closed as IPRA did not obtain a sworn statement from the complainant, as required by statue.

Reference to any IPRA investigation or internal investigation would unduly prejudice Defendants by creating an improper negative inference that they engaged in some form of wrongdoing bearing disciplinary scrutiny by an internal agency. *See Christmas v. City of Chicago*, 691 F. Supp. 2d 811, 818 (N.D. Ill. 2010) (barring evidence that the Office of Professional Standards "OPS" investigated the incident involving Plaintiff); *Delgado v. Mak*, No. 06 C 3757, 2008 WL 4367458, at *2 (N.D. Ill. 2008) (finding that potential prejudice from testimony regarding internal affairs investigation substantially outweighed its probative value and barred this evidence); *Sallenger v. City of Springfield*, No. 03-3093, 2007 WL 2683791, at *1 (C.D. Ill. 2007) (finding that evidence related to internal investigations, or lack thereof, and any outcome, was inadmissible as probative value is outweighed by danger of unfair prejudice if admitted as there was substantial risk of jury confusion or possibility that the jury would base its decision on improper basis).

The Seventh Circuit has not recognized an allegation of "inadequate police investigatory work" as a civil rights claim in the absence of another recognized constitutional right. *Jacobson v. National Railroad Passenger Corp.*, No. 97 C 6012, 1999 WL 1101299, at *10 (N.D. Ill. 1999); *see also David v. Village of Oak Lawn*, 954 F. Supp. 1241, 1245-46 (N.D. Ill. 1996) (holding that plaintiff did not have constitutional right to have his complaints investigated). Further, there is no *Monell* claim alleged by Plaintiff in this matter regarding the City's policies or procedures. Therefore, this motion should be granted because the proposed evidence is irrelevant, consists of inadmissible hearsay, lacks foundation, its probative value is substantially outweighed by the danger of unfair prejudice and confusion of the issues, and constitutes a subsequent remedial measure. See FED. R. EVID. 401, 402 and 403.

6) **Bar Any Implication or Testimony that the Chicago Police Department Personnel are Being Paid by the City to Appear in Court and Testify.**

Defendant Officers and any potential officer witnesses are members of the Chicago Police Department who earn a salary and will continue to be paid during this trial. As such, Defendant Officers move to bar Plaintiff from making any statements or inferences that they, and non-defendant officer witnesses (if any are called to testify), are being paid for their time in court because it is irrelevant and highly prejudicial. Further, Defendants move to bar any evidence that Defendant Officers and any City employee witness spent time talking to an attorney to prepare for trial. As the 7th Circuit Pattern Jury Instruction 1.16 states: it is proper for a lawyer to meet with any witness in preparation for trial. Allowing Counsel to ask such questions of any witness implies there is something improper with doing so. It is irrelevant that any witness spent time meeting with an attorney to prepare for trial. Instruction 1.16 is not enough to prevent the prejudice suffered by Defendants if such evidence is allow. Any probative value it may have is substantially outweighed by the danger of unfair prejudice and misleading the jury. *See* Fed. R. Evid. 402 and 403.

**7) Bar Any Evidence or Argument that the City of Chicago Improperly Trains, Disciplines, Monitors, or Controls Police Officers.**

Defendants seeks to bar Plaintiff from arguing or eliciting testimony that the City of Chicago improperly trains, disciplines, monitors or controls police officers. Such information is irrelevant to the issues in this case, is highly prejudicial, and is likely to confuse the jury. Fed. R. Evid. 401 and 403. In Illinois, "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. Thus, if Defendant Officers are not liable to Plaintiff in the instant case, neither can the City be liable to Plaintiff. *See Guidry v. Boyd*, No. 06 C 1600, 2007 WL 2317174, *15 (N.D. Ill. July 17, 2007).

Furthermore, no separate policy claim exists against the City of Chicago. To impose liability on a municipality under §1983, Plaintiff must comply with the framework established by the Supreme Court in *Monell v. New York City Dep't of Social Services*, in which the purported constitutional injury must be proximately caused by the execution of an official government policy or custom. 436 U.S. 658, 694 (1978). Plaintiff brings no claim that municipal policy or custom was the direct cause of her alleged constitutional injuries. Therefore, any reference, question or testimony that would imply or suggest that the City improperly trains, disciplines or investigates police officers should be barred.

8) **Bar Argument Regarding Any Alleged Violation of Chicago Police Department Rules, Policies, Regulations, and General Orders**.

Plaintiff should be barred from introducing into evidence, providing any testimony or argument that any officer violated any general orders, special orders, rules and regulations as irrelevant. Violations of state statutes, local ordinances, or administrative or department regulations do not give rise to an action under section 1983, unless the rights are guaranteed under the United States Constitution. *See Davis v. Scherer*, 468 U.S. 183, 194 (1984); *Thompson v City of Chicago*, 472 F.3d 444, 455 (7th Cir. 2006); *Kraushaar v. Flanigan*, 45 F.3d 1040, 1048-49 (7th Cir. 1995); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988); *Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1349 (7th Cir. 1985). Furthermore, courts look to federal law, not state or municipal regulations, to determine the existence and scope of personal liberties protected by the "reasonableness" standard under the Fourth Amendment. *See Gordon v. Degelmann*, 29 F.3d 295, 301 (7th Cir. 1994); *Archie v. City of Racine*, 847 F.2d 1211, 1215-18 (7th Cir. 1988) (en banc); *see also Graham v. Connor*, 490 U.S. 386 (1989). Therefore, whether Defendant Officers or any police officer violated Chicago Police Department rules, regulations, or directives is irrelevant to Plaintiff's section 1983 claims. Fed. R. Evid. 401 and 402. If this Court were to permit Plaintiff to present evidence or suggest to the jury that Defendant Officers or other police officers may have breached some obligation they had to their employer through an alleged rule violation would be confusing to the jury and unfairly prejudicial to Defendants in the defense of this matter. Fed. R. Evid. 403. *See Walker v. City of Chicago*, No. 91 C 3669, 1992 WL 317188, *4 (N.D. Ill. Oct. 27, 1992).

Even if said orders, rules and regulations are used for impeachment purposes only, they would confuse the issues that are before the jury and invite them to decide this case on a standard other than what the law requires.

Accordingly, Plaintiff should not be permitted to inject the possibility of a rule violation into these proceedings. Pursuant to Federal Rules of Evidence 401, 402, and 403, Plaintiff should not be allowed to argue, present evidence, or imply that Defendant Officers or any police officer may have violated the rules and regulations of the Chicago Police Department in any involvement with Plaintiff they may have had.

**9) Bar any Testimony/Evidence/Argument that any Non-Defendant Police Officer Engaged in Misconduct in this Incident.**

Plaintiff should be barred from introducing any testimony, evidence, argument, or innuendo from Plaintiff, Plaintiff's counsel, or any witnesses, that any non-Defendant police officers, non-Defendant Chicago Police Department personnel in this matter, or any other City of Chicago employee engaged in any misconduct or caused any injury to Plaintiff in any manner. Defendant cannot be held liable for the actions of another person. *Martin v. Tyson*, 845 F.2d 1451, 1455 (7th Cir. 1988); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); 745 ILCS 10/2-204 (2010).

Any evidence of allegedly improper actions by non-defendant officers should also be barred because this information is irrelevant to any issue in this case and is more prejudicial than probative. *See* Fed. R. Evid. 401, 402, 403. Moreover, such testimony could lead the jury to decide this matter based on Plaintiff's interactions with other police officers instead of the Defendants' actions. *See United States v. Zahursky*, 580 F. 3d 515, 525 (7th Cir. 2009) ("[e]vidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented"); *Gowder v. Bucki*, 2013 WL 6182964, at *4 (N.D. Ill. 2013) (granting motion *in limine* to bar argument or evidence regarding misconduct by non-defendant police officers on the grounds that such evidence would confuse and mislead a jury).

Wherefore, this Court should bar Plaintiff and any of Plaintiff's witnesses from presenting at trial any testimony, evidence, or argument of alleged improper conduct by any non-defendant police officer or any other City of Chicago employee.

**10) <u>Bar Any Reference to the Fraternal Order of Police Disclaimer Given in Response to The Complaint Register Investigation.</u>**

Defendants move this Court to bar any reference to the Fraternal Order of Police ("FOP") Disclaimer given by Defendants and other Chicago Police Officers in their responses and interviews during the investigation by the Independent Police Review Authority ("IPRA") or the Office of Professional Standards ("OPS) of this matter. As a matter of course, IPRA opens a "U-file" on every police shooting where an officer has discharged his weapon and hit another person. As part of this investigation, the individual defendants were required by IPRA to provide statements regarding the shooting. Lodge No. 7 of the Fraternal Order of Police, the bargaining unit for police officers in the Chicago Police Department, instructs its members to provide a disclaimer before completing reports or statements related to internal police department investigations. This disclaimer essentially states that the officer is not providing the statement voluntarily, but is doing so based on the direct order of a superior officer. Such a disclaimer allows police officers to protect their Fifth Amendment right against self-incrimination while allowing the Chicago Police Department to conduct internal investigations of allegations of police misconduct.

Defendants anticipate that Plaintiff may seek to introduce the statements of some police officers from the IPRA investigation. Each of these statements includes a disclaimer that the statements were not provided voluntarily in response to the allegations in the IPRA investigation. The disclaimer is not relevant to a determination of the material issues under consideration by the jury in these matters, pursuant to Fed. R. Evid. 401, because the fact that police officers asserted their Fifth Amendment rights in an internal investigation of the Chicago Police Department has no bearing on any fact at issue in this lawsuit. As the disclaimer is irrelevant, any evidence or argument about the disclaimer is inadmissible under Fed. R. Evid. 402.

Furthermore, this Court should bar any evidence or argument about this disclaimer pursuant to Fed. R. Evid. 403, as its probative value is outweighed by the dangers of unfairly prejudicing Defendants, misleading the jury, confusing the issues and wasting time on collateral issues that do not bear on the ultimate issues presented in this case. Plaintiff's introduction of the disclaimer together with the officers' statements will raise numerous negative inferences which will unfairly prejudice Defendants (*e.g.*, the statement was not voluntary, the statement was given under duress, and implicates the officers' exposure to criminal liability, etc.). The disclaimer would likely mislead the jury to infer that the officer's statement exposes him or her to criminal prosecution and was not voluntarily provided. The unfair consequence of such questions concerning the disclaimer is that the jury may be left with the impression that the officer has something to hide and failed to provide truthful responses to the IPRA investigation. If the jury were so confused or misled, substantial unfair prejudice would result to Defendants. Magistrate Judge Schenkier recently addressed this issue:

> We find the disclaimer – and the related fact that the IA [Internal Affairs] statements are given under compulsion – irrelevant to the veracity of any assertion made in an IA statement. We note that just as CPD supervisors may compel officers to give IA statements, a court may compel witnesses to appear to testify by use of a subpoena, and sanction those who do not comply. We find no support for the proposition that a witness who is compelled to testify in court is more likely to testify falsely than is a witness who voluntarily testifies in a proceeding. Similarly, there is no evidence that the disclaimer affects the veracity of an officer's statement, or that its inclusion would lead them to make false statements or claims with respect to this incident.

*Robinson v. City of Chicago*, 11 C 4528, 2013 WL 3716651 at *1 (N.D.Ill. July 15, 2013). Additionally, if Plaintiff introduces the disclaimer together with the officers' statements, Defendants will be forced to introduce witnesses and documents from the officers' union to explain why the disclaimer appears in statements and reports. In particular, Defendants will offer evidence concerning Lodge No. 7 and the basis for its instruction to include the disclaimer with all statements

prepared in connection with IPRA investigations. Such an explanation would entail presenting evidence concerning the implications of exercising the right against self-incrimination under the Fifth Amendment which arise from being ordered to make a statement. Any evidence concerning the purpose, rationale, and consequences of the disclaimer will result in wholly collateral litigation concerning the legitimacy and necessity of the disclaimer.

In sum, Defendants will be unfairly prejudiced by any reference whatsoever to the disclaimer the officers stated in their interviews for the IPRA investigation in this case. In addition, the trial will be unduly lengthened as a consequence of these side issues and corresponding witnesses, and the introduction of the evidence will only serve as a distraction to the jury and will not assist the jury in deciding the excessive force and malicious prosecution claims presented before it. For these reasons, this Court should bar Plaintiff from referring to the disclaimer if any officers' IPRA statement is offered into evidence during the trial or used for purposes of cross-examination.

**11)** <u>**Bar Any Argument or Inference That Defendants Allegedly Failed to Call Any Witnesses.**</u>

Defendants move to bar Plaintiff from arguing that Defendants failed to call any witness at trial in this case. In a civil case, Plaintiff bears the burden of proving her case by the preponderance of the evidence. Defendants, therefore, have no obligation to put on a defense or call witnesses to support a verdict in their favor. Furthermore, Defendants are under no duty to call any witnesses at trial, and any argument to the contrary by Plaintiff would improperly shift the burden of proof to the Defendants.

For this reason, Defendants seek to move this Court to bar any attempt by Plaintiff to argue Defendants' failure to call any witnesses during trial. Conversely, Defendants should be allowed to make such arguments and inferences to demonstrate that Plaintiff has failed to meet her burden of proof.

**12)** **Bar Plaintiff's Counsel From Requesting Defendants or Their Attorneys to Produce Any Information or Documents In The Presence and Hearing of the Jury and From Implying that Defendants Have Not Complied With Any Discovery Requests.**

Defendants move *in limine* to prohibit Plaintiff's counsel from requesting attorneys for the Defendant to produce any information or documents in the presence and hearing of the jury. *See* FED. R. EVID. 402 and 403. Defendant further moves to bar Plaintiff's counsel from arguing or implying that Defendant has not complied with or been diligent with respect to any discovery request or issues or that certain evidence was not produced in this case since such information or disagreement is irrelevant and designed to confuse the jury. Issues of pre-trial discovery are for the Court to resolve, not the jury. *See* FED. R. EVID. 402 and 403.

**13) Bar John Volland's Criminal Trial Testimony from Admission at Trial.**

Defendants move to bar the criminal trial testimony of John Volland. Initially, Defendants acknowledge that this Court previously considered and ruled on this issue at an earlier juncture of this litigation. However, for purposes of ensuring full consideration of this evidentiary issue at the trial stage and to ensure preservation of the record, Defendants respectfully renew their motion herein.

Prior testimony is hearsay; therefore, it is admissible only if an exception applies. *United States v. Salerno*, 505 U.S. 317, 320 (1992). It is anticipated that Plaintiff will seek to admit Volland's criminal trial testimony under Federal Rule of Evidence 804(b)(1) ("Rule 804 (b)(1)"), which provides a hearsay exception for former testimony of unavailable witnesses, or Federal Rule of Evidence 807 ("Rule 807"), the residual exception. Neither exception applies to admit this testimony. As a result, Plaintiff should be barred from presenting Volland's testimony in this manner.

## I. Volland's prior testimony does not meet the standard of Rule 804(b)(1).

Rule 804(b)(1) permits prior testimony to be admitted as an exception to the hearsay rule only if 1) a party or predecessor in interest 2) had a similar motive and opportunity to develop testimony in the prior action. Defendant Officers were not parties or predecessors in interest to any party to the criminal case against Volland and had neither the opportunity nor a motive to cross examine witnesses at trial. As a result, Volland's criminal trial testimony is inadmissible hearsay.

### A. The prior testimony cannot be introduced against Defendant Officers because the Assistant State's Attorney was not their predecessor in interest.

In drafting Rule 804(b)(1), Congress specifically restricted persons against whom prior testimony could be introduced to those who had participated in the prior proceeding or whose predecessor in interest had done so. Fed. R. Evid. 804, Notes of Committee on the Judiciary, House Report No. 93-650, attached as Exhibit ("Exh.") A. This requirement is necessary because "it is

generally unfair to impose upon the party against whom the hearsay evidence is being offered responsibility for the manner in which the witness was previously handled by another party." *Id.* "Congress presumably made a careful judgment as to what hearsay may come into evidence and what may not. To respect its determination, we must enforce the words that it enacted." *Salerno*, 505 U.S. at 322 . Enforcing Rule 804(b)(1) as enacted means that the individual elements cannot be disregarded. In *Salerno*, the Supreme Court reviewed a ruling of the Second Circuit admitting evidence of an unavailable witness' prior testimony. *Id.* at 320. The lower court had reasoned that "the similar motive element [of Rule 804(b)(1)] should evaporate" to permit the admission of immunized grand jury testimony. *Id.* In reversing this decision, the Court found that "nothing in the language of Rule 804(b)(1) suggests that a court may admit former testimony absent satisfaction of each of the Rule's elements." *Id.* at 321. Thus, the predecessor in interest element must be satisfied before prior testimony may be admitted.

The Seventh Circuit requires that a predecessor in interest had the same, not similar, stake in the litigation as the party against whom the testimony is later offered. *United States v. Feldman*, 761 F. 2d 380, 382 (7th Cir. 1985). Here, the Assistant State's Attorney was not the predecessor in interest to Defendant Officers. The prosecutor did not have "the requisite stake in the proceeding that would be necessary for [she] to be deemed a predecessor in interest" to Defendant Officers. *Id.* A prosecutor's stake in a criminal proceeding is very different than a defendant's stake in civil litigation. The Assistant State's Attorney had no personal interest in the prosecution of John Volland. Indeed, a prosecutor "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935); accord *Boss v. Pierce*, 263 F. 3d 734, 743 (7th Cir. 2001).

Even if the prosecutor could be said to have an interest in securing a conviction, she would still not have a stake equivalent to Defendant Officers in this civil suit. The stakes are high for Defendant Officers in the present litigation. They face personal liability, including punitive damages claims. As such, each defendant has a stake in protecting his personal assets, his family's future, and his professional reputation. None of these interests were a concern for the prosecutor, nor should they have been. As has been observed:

> Prosecutors in criminal trials . . . usually have their hands full trying to protect the public and secure a just result in the criminal prosecution. Under [plaintiff's] theory here, those busy prosecutors would also need to think and act as surrogate defense counsel for future civil rights lawsuits against officers who are not their clients.

*Hill v. City of Chicago*, No. 06 C 6772, 2011 WL 3876915 at *3, (N.D. Ill Sept. 1, 2011), quoting *Butler v. Indianapolis Metropolitan Police Department*, No. 1:07-CV-1103-DFH-TAB, 2009 U.S. Dist. LEXIS 59665, at *6-7 (S.D. Ind. July 13, 2009) (deposition testimony from prior criminal proceeding inadmissible in civil rights lawsuit against police officers).

As such, "a prosecutor's motive in securing just results differs from a civil attorney's motive when representing a defendant in a civil rights lawsuit."  See *Hill*, 2011 WL 3876915, at *3.  Defendants Officers' attorneys are charged with zealous advocacy for their clients and would have a duty to thoroughly explore Volland's credibility concerning primary and secondary allegations in a manner that the prosecutor simply did not.  Because prosecutors do not have the same stake in a criminal trial as a civil defendant has in his own defense, the State's Attorney's Office is not a predecessor in interest to Defendant Officers. As a result, Rule 804(b)(1) does not apply and Volland's prior testimony from criminal proceedings is inadmissible hearsay.

### B. The prosecutor did not have a motive in Volland's criminal case similar to Defendant Officers' motives in the present litigation.

The second requirement for admission of prior testimony is that the party participating in the prior proceeding, whether the same party or a predecessor in interest, had a similar motive to

cross examine the witness. This requirement is also lacking in this case because the motive of the prosecutor in Volland's criminal trial is completely unrelated to the motive of the civil defendants herein.

Similarity of motive is a fact-specific test which considers all of the circumstances surrounding the prior cross examination. *Salerno*, 505 U.S. at 326 (Blackmun, J. concurring). A similar motive does not exist simply because a witness was cross examined by a person taking the same position on an issue. *United States v. North*, 910 F. 2d 843, 907 (D.C. Cir. 1990) (finding that although both Congress and Independent Counsel may have had a similar intent to expose criminal activity, they had different motives in questioning witnesses); accord *United States v. Bartelho*, 129 F. 3d 663, 672 (1st Cir. 1997) ("[T]he similarity of a broad and general interest in testing the witness's credibility in each proceeding is not enough to establish 'similar motive.'") The focus is on the circumstances of the questioning and the examiner's interest in the testimony:  The test must turn not only on whether the questioner is on the same side of the same issue at both proceedings but also on whether the questioner had a substantially similar degree of interest in prevailing on that issue. *United States v. DiNapoli*, 8 F. 3d 909, 912 (2d Cir. 1993) (en banc) (affirming exclusion of grand jury testimony from criminal trial).

At least one circuit court that compared the motives of a prosecutor in a criminal case to those of a police officer defendant in a civil rights case found the motives dissimilar. See *Hannah v. City of Overland*, 795 F. 2d 1385, 1391 (8th Cir. 1986).  In *Hannah*, plaintiff alleged that his civil rights were violated when police officers threatened and assaulted him during his interrogation. *Id.* at 1386. Plaintiff sought to introduce testimony from criminal proceedings of two witnesses who claimed to have felt "pressured and threatened" to implicate plaintiff in a murder. *Id.* at 1390. The court found that the State had little interest in challenging these witnesses regarding the alleged threats by police because there was other credible evidence of plaintiff's guilt. *Id.* at 1390-91. As a result, the lower

court did not err in excluding this prior testimony. *Id.* at 1391; accord *Butler*, 2009 U.S. Dist. LEXIS 5665, at \*5 ("[t]he motive of the prosecutor to cross-examine the witness is markedly different from that of the defendant police officer or city in a later civil lawsuit arising from the same incident."); *Pacelli v. Nassau County Police Dept.*, 639 F. Supp. 1382, (E.D.N.Y. 1986) (criminal trial testimony inadmissible against police officer in civil action because issues central to civil litigation were collateral to prosecutor's case); *Annunziata v. City of New York*, No. 06 Civ. 7637(SAS), 2008 U.S. Dist. LEXIS 42097, at \*35 (S.D.N.Y. May 28, 2008) (criminal trial testimony inadmissible in Section 1983 action against police officers because prosecutor did not have the same motive to cross examine regarding coercion).

In *United States v. Feldman*, 761 F.2d 380, 385 (7th Cir. 1985), the Seventh Circuit held that circumstances or factors that influence motive-to-develop-testimony include: 1) the type of proceeding in which the testimony is given, (2) trial strategy, (3) the potential penalties or financial stakes, and (4) the number of issues and parties. The court considered whether testimony from a previous civil action was admissible in a criminal prosecution concerning the same events. *Id.* at 383. The defendants were being prosecuted for mail fraud in connection with the sale of commodities. *Id.* at 382. Previously, the defendants had been parties to a civil action concerning the same conduct. *Id.* At the criminal trial, the district court admitted the testimony of a business associate that had been taken in the civil proceedings. *Id.* at 382-83. The Seventh Circuit reversed, finding that the deposition was inadmissible because the defendants did not have a similar motive to cross examine the witness at the civil deposition. *Id.* at 387. Applying the aforementioned criteria led the court to conclude that the motives of the defendants in the civil and criminal actions were not similar since they employed different strategies and had different stakes in the litigation. *Id.* at 387.

Applying these criteria to the present case illustrates the difference in the motives of the prosecutor in the Volland criminal proceedings and Defendant Officers herein. The first

consideration is the effect of the type of proceeding on the motive of the examiner. The purpose of the proceeding and the applicable burden of proof influence the motive in questioning a witness. *See United States v. Powell*, 894 F. 2d 895, 901 (7th Cir. 1990) (finding that the government did not have the same motive to cross examine witness at a plea hearing as at trial).

In this case, the purpose of the Volland criminal trial was to determine whether Volland resisted a peace officer and committed a battery. The prosecution had the burden of proof beyond a reasonable doubt and was more interested in presenting the jury with evidence of Volland's guilt than in rebutting allegations that one or more of the Defendant Officers responded to Volland's actions with unreasonable force. The nature of the present civil proceedings places the Defendant Officers in a very different position than the prosecutor. See *United States v. Sklena*, No. 09 CR 0202, 2011 WL 1755769, at *10 (N.D. Ill. May 9, 2011) (strategies and stakes generally not the same in civil proceeding as in a criminal proceeding).

The purpose of this civil action is to determine whether Defendants unlawfully seized, used excessive force against, and maliciously prosecuted Volland. Because the burden of proof is simply a preponderance of the evidence, the Defendants have a greater interest than the prosecutor in eliciting evidence to tip the scales in their favor.

The second factor, the strategy of the examiner, also reveals a different motive. As the Seventh Circuit observed, "[i]t is well-settled that strategies for civil and criminal trials may differ greatly." *Feldman*, 761 F. 2d at 385. The strategy in prosecuting Volland was to elicit testimony demonstrating Volland had pushed Officer Sautkus in an insulting and provoking manner and then tried to defeat attempts to place him in custody. (Criminal trial testimony of Officer Sautkus, 12-189278, pp. 21-26, attached as Exh. B). Because the prosecution strategy was to focus on the battery charge, along with Volland's resistance of arrest, the prosecutor did not have a "real need or incentive to thoroughly cross-examine" Volland regarding allegations against the police or to defend

Officers Sautkus and Campbell personally. See *Feldman*, 761 F. 2d at 385 ("'Mere naked opportunity'
to cross-examine is not enough; there must also be a perceived, real need or incentive to thoroughly
cross-examine at the time of the [prior testimony].'")

The third consideration– potential penalties and financial stakes – best demonstrates the
different motives of the prosecution and Defendant Officers. The influence of a party's stake in the
litigation on his motive was emphasized by the Seventh Circuit in *Feldman*, where the court noted
that the criminal defendants' personal stake in the proceedings was "qualitatively and quantitatively"
greater than their stake in a prior civil action in which they had little personal risk. 761 F. 2d at 386.
As addressed above, Defendant Officers in the present civil action have a high personal stake in this
litigation, in which they face personal liability, including punitive damages claims. The motive of
Defendant Officers to defend this litigation is personal, since each risks losing personal assets,
jeopardizing his family's future, and damaging his professional reputation. See *Butler*, 2009 U.S. Dist.
LEXIS 59665, at *5 (stating that, unlike a prosecutor, a police officer in a civil action "has powerful
financial and professional motives" to challenge testimony). In contrast, Defendant Officers had no
personal stake in Volland's criminal trial; they were simply witnesses. Nor did the prosecutor have a
personal stake in the criminal action which was qualitatively or quantitatively equal to that faced by
defendants herein. The prosecutor did not stand to lose any personal assets if Volland was acquitted.
As a result, the prosecutor did not have the same motivation to cross examine witnesses as
Defendant Officers herein.

The final consideration in evaluating motive is the number of issues and parties in the two
proceedings. Where a case presents a number of issues, the motive to address a particular issue may
be less. "If a fact is critical to a cause of action at a second proceeding but the same fact was only
peripherally related to a different cause of action at a first proceeding, no one would claim that the
questioner had a similar motive at both proceedings to show that the fact had been established (or

disproved)." *United States v. DiNapoli*, 8 F.3d 909, 912 (2d Cir. 1993). This is exactly the circumstance presented in this case. The principal focus at Volland's criminal trial was on whether Volland pushed Officer Sautkus, not what type of force Sautkus used in response or whether it was more force than reasonably necessary under the circumstances. Moreover, in addition to Plaintiff's excessive force claim, Plaintiff also brings a civil claim for an unlawful seizure, alleging that there was no basis to stop Volland in the first place. At the criminal trial, conversely, Volland only stood trial on the charges of resisting and battery and, therefore, the propriety of the stop was not an issue of consequence whatsoever.

Whether a party was motivated to address an issue is determined by looking to the particular points the examiner sought to make with a witness and whether the examination left other points undeveloped which would be relevant to the present action. *United States v. Bartelho*, 129 F. 3d 663, 672 (1st Cir. 1997) (ruling prior testimony inadmissible where prior examination challenged credibility of witness generally but did not address the particular issue of whether identification of the defendant was credible). Review of the proffered testimony is helpful in this regard. In *Oberlin v. Marlin American Corp.*, 596 F. 2d 1322, 1329 (7th Cir. 1979), the Seventh Circuit considered whether a deposition in a previous action for fraudulent representation was admissible against the same defendants in a subsequent action that alleged different fraudulent representations and involved an agency theory. The court reviewed the deposition in question and found no testimony concerning an agency relationship between the defendants. *Id.* at 1329. Because agency was not at issue in the previous litigation, defendants did not have a motive to address this issue, which was key to the subsequent litigation. *Id.*

Similarly, during Volland's criminal trial, several issues were not addressed in the prosecution's cross examination of Volland that Defendant Officers would address if they had the opportunity to cross examine him. First of all, it is noteworthy that the cross examination of Volland

was very brief. (See Volland Cross Examination in *People v. Volland*, No. 12 CR 189278 (January 28, 2013), attached as Exh. C). The prosecution did not inquire into the details of Volland's allegations that he had committed no traffic offense at the time he was pulled over, that pepper spray was used against him unnecessarily, or the manner in which he claims he was dragged from his vehicle. *See id.* These areas of questioning could be relevant to whether Defendant Officers had probable cause to arrest Volland, whether Volland's actions necessitated that force be used against him, and whether Volland's allegations concerning the manner and degree in which force was used were credible at all. The fact that these issues were not addressed or addressed only in passing in the prosecution's cross examination of Plaintiff indicates that the State did not have the same motive as the Defendant Officers herein.

The presence of additional issues in a case is of particular importance when additional parties are involved in the subsequent litigation, since the previous examiner is less likely to have examined the witness from the perspective of that party. "The reliability of [prior] testimony is not assured by the mere fact of cross-examination but only by cross-examination designed to illuminate the accuracy of the statement as it concerns the *particular* [party]." *Government of the Canal Zone v. Pinto*, 590 F. 2d 1344, 1353-54 (5th Cir. 1979). The personal responsibility of Sautkus and Campbell, while essential to a finding of liability in this civil action, was simply not a concern to the State's Attorney prosecuting Volland. In sum, because Sautkus and Campbell are not predecessors in interest to the prosecutor and because the prosecutor did not have a similar motive to cross examine Volland at the criminal trial, Rule 804(b)(1) does not apply to except Volland's prior testimony from the hearsay rule.

**II. Volland's prior testimony is not admissible under Federal Rule of Evidence 807.**

Rule 807 is also inapplicable to the admissibility of Volland's prior testimony. Rule 807, sometimes known as the residual hearsay exception, reads:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. Fed. R. Evid. 807.

Prior testimony does not qualify for an exception under Rule 807, because this category of hearsay is "covered by" Rule 804(b)(1). *United States v. Dent*, 984 F. 2d 1453, 1465-66 (7th Cir. 1993) (Easterbrook, J. and Bauer, C.J., concurring) ("[the residual exception] reads more naturally if we understand the introductory clause to mean that evidence of a kind specifically addressed ("covered") by one of the four other subsections must satisfy the conditions laid down for its admission. . . .") The Seventh Circuit has recognized that the applicability of the residual exception to prior testimony is doubtful after the Supreme Court's decision in *Salerno*. *Dent*, 984 F. 2d at 1463. In *Salerno*, the Supreme Court held that prior testimony could not be admitted unless all elements of Rule 804(b)(1) had been met. 505 U.S. at 324. The lower court's reasoning that special circumstances warranted overlooking the motive requirement was rejected by the Supreme Court, which "fail[ed] to see how it could create an exception to Rule 804(b)(1)." *Salerno*, 505 U.S. at 324. Although given the opportunity, the *Salerno* Court did not address the residual exception in its opinion. Instead, the Court remanded the case for further consideration of a single issue which would determine admissibility of the prior testimony: whether the motive element of Rule 804(b)(1) was satisfied. *Id.* at 325. Thus, the court implicitly rejected the use of the residual exception to circumvent the requirements of Rule 804(b)(1).

Even if Rule 807 was a valid exception for prior testimony, Volland's testimony would not meet its strict requirements. The Seventh Circuit has recognized that "Congress intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances." *United States v. York*, 852 F.2d 221, 224 n.1 (7th Cir. 1988). Thus, hearsay is admissible under this exception

only if it meets the stringent criteria of Rule 807. *United States v. Hooks*, 848 F. 2d 785, 796 (7th Cir. 1987). To be admissible under this residual exception, hearsay must 1) possess circumstantial guarantees of trustworthiness equivalent to those enumerated in Rules 803 and 804; 2) be offered as evidence of a material fact; 3) be more probative than other evidence on the issue; and 4) serve the interests of justice. Fed. R. Evid 807. Volland's prior testimony fails to pass even the first hurdle.

A finding of trustworthiness is critical to admission of a hearsay statement under the residual exception. *United States v. Hall*, 165 F. 3d 1095, 1110 (7th Cir. 1999). A critical consideration is the declarant's motivation for testifying. If the declarant is disinterested in the proceedings, a "mere bystander with no axe to grind," his testimony tends to be more reliable. *Hooks*, 848 F. 2d at 797. On the other hand, if the declarant has a clear motive to lie, his statement is untrustworthy. See *Id.* In *Hooks*, the defendant sought to admit the statements of two witnesses who had given statements to a prosecutor, in the presence of counsel, regarding their lack of involvement in a conspiracy. *Id* at 796. In considering whether these statements were admissible under a residual hearsay exception, the Seventh Circuit noted that "[t]heir statements, in the face of possible indictment, were suspiciously self-serving" and that they had "motive to testify falsely." *Id.* at 797. Because the statements lacked the requisite trustworthiness, the court affirmed the exclusion of these statements. *Id.*

In this case, Volland had a clear motive to lie about his experience: he was on trial for resisting arrest and battery and, if convicted of either charge, could have received a prison sentence. (See 720 ILCS 5/12-3(a)(2) (West 2008); 720 ILCS 5/31-1(a) (West 2008)). The fact that Volland was motivated to lie overwhelms all other factors and makes his testimony untrustworthy. Overall, the circumstances of Volland's testimony do not provide guarantees of trustworthiness sufficient to overcome the presumption against admissibility.

Wherefore, for the reasons provided above, Defendants respectfully request this Honorable Court issue an order excluding the prior criminal trial testimony of Plaintiff's decedent John Volland.

**/s/ Brendan Moore**
BRENDAN MOORE
Assistant Corporation Counsel


City of Chicago Department of Law
30 N. LaSalle Street, Suite 900
Chicago, IL 60602
(312) 744-9602

**/s/ Jessica Griff**
JESSICA GRIFF
Assistant Corporation Counsel


City of Chicago Department of Law
30 N. LaSalle Street, Suite 900
Chicago, IL 60602
(312) 742-3982