IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MADONNA VOLLAND-GOLDEN, as )
executor of the estate of JOHN VOLLAND, )
                                                              Plaintiff, )
                                            v. ) Case No. 13 C 1477

CITY OF CHICAGO, et al., )
                                          Defendants. )

# MEMORANDUM OPINION AND ORDER

Madonna Volland-Golden, as executor of the estate of her late brother John Volland ("Volland"), is presently the plaintiff in this action originally brought by Volland against the City of Chicago (the "City") and two of its Police Officers, Sean Campbell and Steven Sautkus (for convenience, collectively "Defendant Officers"), in an action described in this fashion in the agreed-upon proposed case statement set out in the parties' joint final pretrial order ("FPTO"):

> This is a civil rights claim case. The Plaintiff, Madonna Volland-Golden, represents the estate of her brother, John Volland, who died while this case was pending on May 31, 2014. His death is not in any way related to the claims of this case. Before his death, Mr. Volland brought this lawsuit, alleging that on February 25, 2012, the Defendants, who are Chicago police officers, unlawfully stopped his vehicle, falsely arrested him, used excessive force upon him, and unlawfully searched him and his car. Mr. Volland also alleged that Defendants caused him to be maliciously prosecuted for resisting arrest and battery, as well as a traffic violation and a City of Chicago ordinance violation. Defendants deny the allegations made by Plaintiff and deny any wrongdoing.

In compliance with the scheduling order that was entered by this Court promptly after the conference at which the FPTO was reviewed and approved, the parties have submitted their motions in limine -- 6 by plaintiff and fully 18(!) by defendants. With each side now having

responded to the other side's motions, they are ripe for decision. This memorandum opinion and order will address plaintiff's motions first, then turn to defendants'.

## Plaintiff's Motions In Limine

Because P. Motions 1 and 2 are closely intertwined, this opinion can address them as though they were a 1 and 1A entry in a thoroughbred race. Here are the two motions:

1. P. Motion 1 seeks "to bar evidence of past drug and alcohol use."

2. P. Motion 2 seeks "to bar evidence and testimony relating to David Schreck and Mark Schreck."

Regrettably, defense counsel have responded with a tactic that to this Court is a highly reprehensible effort to forge an impermissible weapon as part of a litigator's arsenal by injecting a highly prejudicial argument into a case through rank speculation and then, when challenged, by contending that a cautionary jury instruction will suffice to eliminate the unfair prejudice.

As to P. Motion 1, there is no question that Volland, as a young man in his 20s and early 30s -- some two decades before his encounter with the Defendant Officers, who are charged here with violating his constitutional rights in the course of an arrest when he was 50 years old -- struggled with alcohol addiction and a cocaine addiction as well. Family members -- his sister (now the plaintiff as Executor of his estate) and his son -- testified to his regular attendance at AA meetings as a recovering alcoholic and to their unawareness of any relapses on his part as to either of his earlier addictions.[1]

It is undisputed that the Defendant Officers had no knowledge of Volland's early history in that respect at the time of the encounter that gave rise to this lawsuit. In that regard the

---

[1] None of that testimony will be adduced at trial, for the entire subject is out of bounds for the reasons stated in this opinion.

principles that define the only facts relevant to Volland's excessive force claim are those stated nearly a quarter century ago in Sherrod v. Berry, 856 F.2d 8021, 805 (7th Cir. 1998) and repeated by various District Judges since then:

> Knowledge of facts and circumstances gained after the fact . . . has no place in the trial court's or jury's proper post-hoc analysis of the reasonableness of the actor's judgment. Were the rule otherwise, as the trial court ruled in this instance, the jury would possess more information that the officer possessed when he made the crucial decision. . . . The reception of evidence or any information beyond that which Officer Berry had and reasonably believed at the time he [acted] is improper, irrelevant and prejudicial to the determination of whether Officer Berry acted reasonably "under the circumstances."

And the same is true as to other Section 1983 claims such as those charging false arrest (Williams v. City of Chicago, 733 F.3d 749, 756 (7th Cir. 2013)) and unlawful search (United States v. Williams, 627 F.3d 247, 251 (7th Cir. 2010)).

As to the use of drugs in particular, although District Court opinions are of course nonprecedential, what this Court repeated in Gregory v. Oliver, No. 00 C 5984, 2003 WL 1860270 at *1-*2 (Apr. 9, 2003) might well have been written for this case:

> In today's climate, any evidence as to a litigant's use of drugs has an obvious potential for being extraordinarily prejudicial -- for creating the prospect of deflecting the factfinders' attention from the matters that are really at issue in the case to everyone's universally-shared concerns as to the problems that drug usage is creating for our society. For that reason, where (as here) the subject matter of a trial does not itself concern controlled substances it is particularly appropriate to apply the principle announced in such cases as Jarrett v. United States, 822 F.2d 1438, 1446 (7th Cir. 1987):
>
>> A witness's use of drugs may not be used to attack his or her general credibility, but only his or her ability to perceive the underlying events and testify lucidly at the trial.

In sum, then, the truly relevant fact is that no fact was known to either of the Defendant Officers as to any drug-related impairment (or for that matter, any impairment of any type) on Volland's part at the time that is at issue in this litigation. And even had that not been the case, any effort

to shoehorn such testimony into the case would contravene both Fed. R. Evid. ("Evid. Rule") 404(a)(1) and (b)(1) and, to boot, Evid. Rule 403. Hence P. Motion 1 must be and is granted.

As for P. Motion 2, here is what Defendants' Amended Joint Rule 26(a) Disclosures said as to the potential for testimony from Mark Schreck (whose son David, who was seen by Volland at an AA meeting earlier in the evening on which the events at issue in this action transpired, is now deceased):

> Mark Schreck, 5101 S. Mobile, Chicago, IL, (773) 458-0538: May have knowledge of Plaintiff, including his past drug and/or alcohol use and recent relapse. Mark Schreck may have knowledge of Plaintiff's association with Schreck's son, David Schreck, and the fact that David Schreck has and may still live with Plaintiff. Mark Schreck may have knowledge of the relationship between Plaintiff and David Schreck, including as it relates to drug possession and/or use. Mark Schreck may have knowledge of threats that Plaintiff has made toward Schreck and other in the past.

What has been said earlier torpedoes any such proffered testimony as well, not only because of the already-stated lack of relevance but also because of its totally speculative nature. So P. Motion 2 is granted as well.

P. Motion 3 seeks an "order regarding use at trial of Defendants' judicial admissions," a motion that seeks to include in that category statements taken directly from defendants' Amended Answer to the Complaint in this action. Even though defendants concede the uncontested status of those admissions, they objected to their inclusion in the FPTO's statement of uncontested facts on grounds that this Court finds difficult to understand. Defendants acknowledge the principle stated in <u>Keller v. United States</u>, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995):

> Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them.

Nor do defendants "contest that judicial admissions may not be controverted at trial" (D. Resp. Mem. at 9). Yet defendants object once again, urging that they "should be permitted to testify to

- 4 -

the facts at issue in this matter, including testimony that would give contexts of those facts" (id.). This Court does not of course contemplate blocking defendants from introducing appropriate evidence in that respect, but the appropriateness or inappropriateness of defendants' proposed evidence must be decided in the context of the trial itself. Hence P. Motion 3 is also granted on that premise.

As for publishing those admissions to the jury, that appears to be no more problematic than the publication of a stipulation between litigants. To the extent that the right to respond sought by defendants and referred to in the preceding paragraph is needed to explain the effect of a judicial admission, appropriate language should be included in plaintiff's proposed statement of judicial admissions.

P. Motion 4 asks "to bar defense counsel from asking leading questions of Defendant Officers and to allow Plaintiff's counsel to ask leading questions of all police officers and City employee witnesses." It is difficult to understand the nature of defendants' conditional response to that motion, solidly grounded as it is in Evid. Rule 611(c), but this Court will of course apply that rule in its normal fashion (in that respect, defense counsel appear to have an overly constricted view of the concept of "a witness identified with an adverse party"). P. Motion 4 is granted as well.

P. Motion No. 5 asks "to bar defendants from reading their police reports into evidence." Defense counsel begin the response to that motion with a statement that they have no such intention, so that P. Motion 5 is granted as well. To the extent that defense counsel go on to address other facets of the use of police reports, that subject is dealt with hereafter as to D. Motion 17.

Finally, P. Motion 6 seeks "to bar improper bolstering of police officers in general." Defense counsel have sought to recharacterize that motion by stating that it "seeks to bar evidence relating to the risk of police work." It is necessary, in the tension that exists in our society today in this area, to be sensitive to the problem that many prospective jurors may come to a case such as this one with preconceived notions in one direction or the other. For that reason, in the jury selection process this Court always shapes its voir dire examinations both to explore for the existence of any such predilections and, importantly, to emphasize that this case is about a particular incident and not about police work in general.

Here defendants' response, despite counsel's protestations, seeks to load the dice inappropriately by asserting an intention to introduce broad generalizations about risk rather than focusing on the particular circumstances of the encounter that gave rise to this lawsuit. This Court intends to provide appropriate leeway in this area, but given the nature of defense counsel's response it will require that at the time of trial counsel will give a preview of the scope and nature of their intended questioning, so that the testimony may be kept within proper bounds. P. Motion 6 is accordingly granted on that basis.

**Defendants' Motions In Limine**

D. Motion 1 seeks to "bar any testimony, evidence, argument or reference to other civil lawsuits, complaint registers, and/or disciplinary historic of defendants Campbell or Sautkus or other police personnel who may testify." But plaintiff correctly challenges such a bar as overbroad, citing decisions by this Court's colleagues and by this Court itself that have held recent sustained Complaint Registers ("CRs") to be available for impeachment purposes under Evid. Rule 608(b) -- and there is also a potential for admission under Evid. Rule 404(b). Hence

D. Motion 1 is denied in its global form, though it may be renewed in individual situations at the time of trial.

D. Motion 2 seeks to "remove the City of Chicago as a named defendant at trial," while plaintiff's response is headed with this boldface statement in opposition:

> There is no valid reason to create a fictitious case title or conceal from the jury who the Defendants are in the case.

Both sides have valid concerns in that respect: Defendants wish to avoid the potential for an inflated jury verdict if plaintiff prevails (a possibility that the jury may go overboard based on its perception that a deep pocket is available for the payment of a damage award),[2] while plaintiff has the flip-side concern that a jury might award less than appropriate damages because of its awareness of the income level and likely net worth of the average police officer.

This Court's consistent practice in actions of this nature is to apprise the jury of the fact that the City bears financial responsibility for compensatory (but not punitive) damages awarded against its officers.[3] And that being so, this Court always includes in its instruction on compensatory damages an even-handed directive that the jury must consider only the elements

---

[2] Time has made such a concern ironic, given the widespread knowledge of the City's financial problems.

[3] Because of the City's insulation against punitive damages under <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247 (1981) and its progeny, a subject that is always covered by this Court as an addition to its jury instruction on the possible award of punitive damages (modifying the Seventh Circuit Committee's Pattern Instruction 7.24), a failure to apprise the jury of the different compensatory damages principle by remaining silent on that subject would be potentially confusing.

set out in that instruction, without giving any regard to whether the officer or officers found at fault can bear that liability financially. Given that construct, D. Motion 2 is granted.[4]

D. Motion 3 asks that this Court "bar testimony/evidence/argument reference to unrelated allegations of police misconduct in the media (e.g. Anthony Abbate, SOS, Commander Evans, Jason Van Dyke)." Plaintiff responds by stating that she "mostly agrees with Defendants' motion in limine No. 3," but the response then goes on to refer to this Court's citation to and quotation from the opinion issued by its colleague Honorable Rubén Castillo in Charles v. Cotter, 867 F. Supp. 648, 664 (N.D. Ill. 1994). This Court's view remains the same today. Hence it denies without prejudice D. Motion 3 in its global form, with defendants free to raise that issue in individual circumstances at the time of trial.

D. Motion 4 seeks to "bar evidence, argument or suggestion of a speculative police "code of silence" or "blue wall." But if read literally, that blanket prohibition would preclude the introduction of proper evidence of bias on the part of a testifying officer, a subject always relevant to a jury's determination of credibility. Accordingly D. Motion 4 is denied, with more particularized objections in that respect to be considered as and when they arise in the context of trial.

D. Motion 5 asks that this Court "bar any evidence or argument regarding investigations by the Independent Police Review Authority or the City of Chicago Police Department, the

---

[4] Defendants have also included in that motion a request that this Court not identify defense counsel as "assistant corporation counsel" or as city employees. Although that aspect of the motion has not been addressed in plaintiff's response, this Court never refers to the firm or agency with which any trial counsel is affiliated -- it always refers to lawyers by their names as individuals.

discipline imposed (or lack thereof) as a result of said investigations," while plaintiff responds that she "should be allowed to refer to the underlying IPRA investigation." On that score plaintiff points out that the defendant officers' "To-From" memoranda providing their responses to Volland's initiation of a complaint with IPRA have been identified as trial exhibits, while defendants themselves have included the transcript of Volland's IPRA statement on their exhibit list in the FPTO. That being the case, a failure to refer to the IPRA proceeding would leave the jury subject to confusion as to what unidentified "prior proceeding" had given rise to those trial exhibits. Here an appropriate cautionary instruction that no adverse inference should be drawn from the fact of an IPRA investigation would remove any prejudicial sting, and D. Motion 5 is denied on that basis.

D. Motion 6 proposes that this Court "bar any implication or testimony that the Chicago Police Department personnel are being paid by the City to appear in court and testify." In that regard plaintiff responds that evidence to that effect may be considered by jurors as bearing on credibility -- and however thin jurors might find such an inference to be, it is after all potential grist for the jury's mill. So D. Motion 6 is also denied.[5]

D. Motion 7 seeks to "bar any evidence or argument that the City of Chicago improperly trains, disciplines, monitors, or controls police officers." In a refreshing change of pace, plaintiff's response begins "Plaintiff does not object to this motion in limine with respect to this evidence generally." But having said that, and having recognized that no separate policy claim is advanced against the City (that is, no Monell claim is advanced here), plaintiff points out

---

[5] This Court expresses no view as to the wisdom of such an argument as a matter of trial strategy. Its function is to rule on admissibility of evidence, not on whether evidence should or should not be presented or objected to as a matter of good judgment.

correctly that some particular order, directive, rule or regulation "might become relevant for purposes other than proof of a constitutional violation." Hence D. Motion 7 is granted, subject to the issue possibly being revisited in some particular respect in the context of trial.

Relatedly D. Motion 8 seeks to "bar argument regarding any alleged violation of Chicago Police Department rules, policies, regulations and general orders." Here is how plaintiff's response as to that motion is headed:

> CPD General Orders are admissible for evidentiary purposes other than to establish a Constitutional violation, and any perceived prejudice can be cured by Seventh Circuit Pattern Instruction No. 7.04.

That objection has the matter right, and D. Motion 8 is accordingly denied.

D. Motion 9 urges that this Court "bar any testimony/evidence/argument that any non-defendant police officer engaged in misconduct in this incident." Plaintiff's response states correctly in its heading:

There is no legal basis to exclude this evidence; it is relevant to bias and motive. Moreover, the response goes on to provide a specific instance in which the conduct of a non-defendant officer can bear on the possible liability of the defendant officers as well as on their credibility and asserted bias. D. Motion 9 is denied.

Next, D. Motion 10 urges a bar on "any reference to the Fraternal Order of Police disclaimer given in response to the Complaint Register investigation." That disclaimer reads:

> This statement is not given voluntarily, but under duress. I am only giving this statement because I know I will be fired if I refuse.

This Court has admitted the Fraternal Order of Police's disclaimer on more than one occasion, explaining both (1) that "if the Fifth Amendment's right against self-incrimination may be permissible to create an adverse inference in the civil case," the disclaimer at issue may be

used at trial for a similar purpose and (2) that the witnesses or the defense counsel would have a fair opportunity to explain the disclaimers if plaintiff sought to introduce them. Hence D. Motion 10 is also denied.

     D. Motion 11 is captioned "bar any argument or inference that defendants allegedly failed to call any witnesses." But defense counsel seeks to make that bar a one-way street, arguing that defendants should be allowed to make such arguments and inferences as to a corresponding failure on plaintiff's part. Such counter arguments are scarcely new to trial practice -- the Committee on Pattern Civil Jury Instructions of the Seventh Circuit has unsurprisingly dealt with those issues in its Pattern Instructions 1.18 and 1.19. This Court regularly draws on those instructions in its trials (1.18 without exception, 1.19 where appropriate), but that does not preclude either party's counsel from arguing that the opponent has not met his or her burdens of proof -- but not in "missing witness" terms. D. Motion 11 is denied.

     D. Motion 12 reads "bar plaintiff's counsel from requesting defendants or their attorneys to produce any information or documents in the presence and hearing of the jury and from implying that defendants have not complied with any discovery requests." Plaintiff's counsel has no quarrel with that motion, while at the same time reserving some other appropriate rights. D. Motion 12 is granted.

     D. Motion 13 seeks to have this Court "bar John Volland's criminal trial testimony from admission at trial." As philosopher George Santayana famously observed in his book <u>Reason in Common Sense</u>, "Those who cannot remember the past are condemned to repeat it." That same question was fully briefed more than 1-1/2 years ago (in December 2014 and January 2015), and this Court's February 20, 2015 opinion flat-out rejected defendants' positions "from every perspective" -- see Evid. Rule 804(b)(1). It is entirely irrelevant that the defendant officers were

not yet parties at that time -- this is not a matter of preclusion but of principle.  D. Motion 13 has no more substantive merit now than the identical motion had when the February 2015 opinion was issued.  It is denied.

Before this opinion turns to defendants' other five motions in limine, this Court pauses to dispatch the effort by plaintiff's counsel to strike those motions because they were a day late (indeed, motions 1 through 13 were filed on the specified due date of July 28, 2016, while the remaining five were filed on July 29).  Plaintiff's young lawyer who filed the motion to strike may be one of the rare birds who has never been late for or with anything in his life, but if so he ought to avoid any future slip at his peril -- remember Matthew 26:52:

> All they that take the sword shall perish with the sword.

Hence that threshold motion to strike is denied.

To return to defendants' contentions, D. Motion 14 reads "bar any third party or post-occurrence witness testimony concerning alleged statements of John Volland," contending that such statements are "inadmissible hearsay."  But plaintiff's response counters that some such statements are admissible under established exceptions to the rule against hearsay -- see, e.g., Evid. Rule 803(3) and 803(4).  Hence the global prohibition urged in D. Motion 14 is denied, and this Court will deal with all of the rules regarding hearsay objections and exceptions at trial.

D. Motion 15 seeks to "bar any testimony, evidence, or argument that the defendant officers or any other testifying officers live in the 8th Police District," as assertedly irrelevant.  Plaintiff's counsel responds that what he characterizes as "unreasonably aggressive and outrageous behavior toward Volland" on the part of the defendant officers "was motivated by the abuse of their authority as police officers to 'protect' their homes and their neighborhood," with the motive and intent "to intimidate people they perceived as 'threatening' their neighborhood

- 12 -

and property." This Court must not of course preempt the jury's opportunity to consider and evaluate that argument. D. Motion 15 is denied.

D. Motion 16 reads "bar the admission of evidence at trial if its entry is not offered through a witness with personal knowledge of its authenticity and relevance." That type of particularized motion is really inappropriately advanced as a motion in limine, for -- as plaintiff's response indicates -- the issues are of a kind better handled in the actual context of trial, when the claimed objection will often have been rendered moot and when this Court will have the actual exhibits at hand for purposes of in-trial rulings. Certainly questions as to authenticity should always be dealt with by counsel in advance of trial, while relevance is obviously best dealt with in the trial environment. In short, D. Motion 16 is denied as premature.

D. Motion 17 reads "bar the admission of arrest/case reports, signed complaints and inventory reports in their entirety as improper hearsay." But plaintiff responds correctly (1) that the criminal complaints against Volland signed by the defendant officers are non-hearsay under Evid. Rule 801(d)(2) and (2) that the statements in Chicago Police Department reports are likewise non-hearsay (see Evid. Rule 801(d)(2)(D)). D. Motion 17 is denied as well.

Finally, D. Motion 18 seeks to have this Court "bar witnesses Connie Massaro and Josephine Volland from testifying at trial." That motion seeks to find support in the fact that those two witnesses were disclosed in Volland's August 27, 2013 responses to interrogatories rather than in the initial disclosures that Rule 26(a)(1)(A) calls for being made up front "without awaiting a discovery request."

This opinion has earlier weighed in on the nitpicking effort by plaintiff's counsel to bar D. Motions 14 through 18 as untimely filed (one day late!). This time it is defense counsel who has taken an ill-considered cheap shot: Anyone with a modicum of experience in the federal

practice knows very well that discovery is an ongoing process.  Note, for example, that the requirement of supplemental disclosures and responses set out in Rule 26(e) refers not only to disclosures under Rule 26(a) but also to responses to interrogatories, requests for production and requests for admission -- and all of them call for updating "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

Here defense counsel have known for fully three years that both Volland's aunt Connie Massaro and his mother Josephine Volland had been identified as "post-occurrence and damages witnesses."  What has really happened here is that defendants -- or, perhaps more accurately, defense counsel -- have simply slept on their rights during the last three years, rather than following up on the early disclosure of the identity of the two now-challenged witnesses.  And it is also worth noting as well that defense counsel have cited no authority to support their current motion, a deficiency as to which <u>Judge v. Quinn</u>, 612 F.3d 537, 557 (7th Cir. 2010) has reconfirmed that "arguments that are unsupported by pertinent authority are waived."

In short, D. Motion 18 should never have been filed.  It too is denied.

## **Conclusion**

All of plaintiff's Motions in Limine Nos. 1 through 6 (Dkt. No. 142) are granted on the basis and for the reasons stated in this opinion.  As for defendants' Motions in Limine Nos. 1 through 13 (Dkt. No. 141) and 14 through 18 (Dkt. No. 143), they are granted in part and denied in part.  More particularly:

1. Motions 2 and 12 are granted.

2. Motion 7 is granted without prejudice.

3. Motions 5, 6, 8 through 11 and 13 through 18 are denied.

4. Motion 1, 3 and 4 are denied without prejudice.

To facilitate setting this case for trial, counsel for the parties are directed to confer and to apprise this Court promptly by letter (either individually or jointly) as to their (and their witnesses') respective unavailabilities for trial during the time frame between October 17 and December 16, 2016, with the letter or letters also to provide this Court with counsel's best estimate as to the anticipated length of trial in light of the terms of the FPTO and the rulings in this opinion. This Court will then issue an order setting the case for trial and prescribing the date for submission of proposed jury instructions and voir dire questions.

_____
Milton I. Shadur
Senior United States District Judge

Date: September 7, 2016